OKUDA & SHIBAGAKI (INC.) ET AL. *v.* UNITED STATES (No. 3585)[1]

---

[1] T. D. 46411

United States Court of Customs and Patent Appeals, May 1, 1933

*Lawrence & Baldwin* (*Martin T. Baldwin* of counsel) for appellants.
*Charles D. Lawrence,* Assistant Attorney General (*Thomas J. Canty* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument April 6, 1933, by Mr. Baldwin and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise involved in this suit, as imported, consists of different-sized silk yarns which have been coated with a cellulose substance, and is sometimes referred to as imitation gut. It was imported through the port of Seattle, Wash., under the Tariff Act of 1922. The lengths range from 10 yards to 100 yards.

The collector of customs classified the merchandise under paragraph 1211 of the Tariff Act of 1922, which reads:

PAR. 1211. All manufactures of silk, or of which silk is the component material of chief value, not specially provided for, 60 per centum ad valorem.

The importers protested, making alternative claims in their formal protests, but, in the end, relying solely upon paragraph 1204, the pertinent portion of which reads:

PAR. 1204. Sewing silk, twist, floss, and silk threads or yarns of any description, made from raw silk, not specially provided for, if in the gum, $1 per pound, but not less than 35 per centum ad valorem; if ungummed, wholly or in part, or if further advanced by any process of manufacture, $1.50 per pound, but not less than 40 per centum ad valorem.

The brief for appellants alleges that the proper interpretation of paragraph 1204, *supra,* involves a consideration also of paragraph 1212 of said act, which reads:

PAR. 1212. In ascertaining the weight or number of silk under the provisions of this schedule, either in the threads, yarns, or fabrics, the weight or number shall be taken in the condition in which found in the goods, without deduction therefrom for any dye, coloring matter, or moisture, or other foreign substance or material.

The protest was overruled by the court below and from its judgment the importers have appealed to this court.

It was agreed by counsel for the respective parties that the issue here is the same as that which was presented in a case, *Takeuchi Bros. et al.* v. *United States* (suit No. 3450), decided by the United States Customs Court May 8, 1931, in which an appeal was taken to this court, which appeal was abandoned without being prosecuted to final judgment upon the merits. The record in the *Takeuchi* case, by agreement, was incorporated into, and made a part of, the record in the instant case.

The acting appraiser describes the merchandise as "fishing lines made of silk," and the Government stands upon this description. The importers submit that it is a silk yarn or thread "advanced by * * * process of manufacture" and that it has not lost its identity as such so as to become a "manufacture of silk." That constitutes the sole ultimate issue of the suit.

Only two judges seem to have participated in the trial of the case below and, while they agree as to the conclusion reached, they are not in harmony as to the reasons therefor.

Judge Tilson holds that the paragraphs at issue do not "* * * reveal anything which even remotely suggests that the classification of this merchandise is governed in any way by the use to which it is put after importation."

Judge Kincheloe says:

> If the testimony satisfactorily showed that the imported class of merchandise was chiefly used as thread or yarn material for further manufacture into other articles or manufactures, and not used chiefly as fishing lines in its imported condition, the merchandise would, in my opinion, be more specifically covered by said paragraph 1204 than by the catchall provision of paragraph 1211 for all manufactures in chief value of silk, not specially provided for. * * * However, I do not consider that the testimony introduced herein has sufficiently shown such fact, and therefore has not overcome the presumption of correctness in favor of the collector's classification.

The brief for appellants states:

> If the present silk yarn had been so manipulated as to constitute, as imported, nothing more nor less than a complete fishing line, ready for immediate use on a fishing rod, and adapted to no other use, it might then perhaps be called a manufacture of silk yarn, dutiable under the provision for "manufactures of silk."

The Government, while apparently insisting that use does not enter into the determination of the question, nevertheless argues that the record discloses that approximately two-thirds of the yarns are, after importation, left as fishing lines and that the other one-third are cut into leaders, which leaders are used in connection with fishing lines, or for fishing purposes.

The argument of appellants as to the merchandise being silk threads or yarns "advanced by any process of manufacture" is based upon the fact of its having been given the cellulose coating. Samples are on file as exhibits. From some of these the cellulose was removed after

importation by being boiled in water, this being done to show the size and structure of the threads independent of the coating. One of the threads is said by a Government examiner, whom the importers called as a witness, to consist of a single yarn made from raw silk; another is described by the same witness as a "plied yarn made from raw silk * * * made from three singles twisted together."

The larger sizes are stated by one witness to be most suitable for use as fishing lines, and the smaller sizes for leaders.

Appellants argue that paragraph 1212, *supra*, negatives any idea that the statutory provisions for silk yarns are limited to yarns composed wholly of silk fiber because the paragraph makes reference to "other foreign substance or material."

As we view the case, the conclusion must be the same whether one adopts the theory of Judge Tilson or that of Judge Kincheloe, and this case does not seem to require an adjudication upon the question of whether classification should be by chief use.

There is no proof sufficient, in our opinion, to establish that the merchandise is not what the collector determined it to be, nor is there sufficient proof to show that it is silk advanced as claimed by appellants. This is true whether use after importation be considered or not.

As imported, it was fishing lines, in some instances not even requiring cutting in order to fit it for use as such. The record fully supports that finding, and there is no testimony whatever to indicate any other possible use, except that of being made into leaders, which leaders partake much of the nature of fishing lines.

The judgment of the United States Customs Court is *affirmed*.